UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| BARTON K. FORRESTER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:10-CV-137 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant, | ) | |

<u>OPINION AND ORDER</u>

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits to Plaintiff, Barton K. Forrester.  For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

<u>BACKGROUND</u>

On July 5, 2006, Plaintiff, Barton K. Forrester ("Forrester"), applied for Social Security Disability Benefits under Title II of the Social Security Act, 42 U.S.C. section 401 et seq. (Tr. 97). Forrester alleged onset of his disability on December 6, 2004, due to low back pain, hip pain, arthritis, degenerative disk disease

and depression. (Tr. 97, 121). The Social Security Administration denied Forrester's initial application, and also denied his claim on reconsideration. On September 19, 2008, Plaintiff appeared with counsel at an administrative hearing before Administrative Law Judge ("ALJ") Terry Miller ("Miller") in Fort Wayne, Indiana. Plaintiff testified at the hearing, as did Dr. Robert Barkhaus, a vocational expert ("VE"). On November, 13, 2008, ALJ Miller issued a decision finding Plaintiff not disabled. (Tr. 9-17).

Plaintiff requested that the Appeals Council review the ALJ's decision, and this request was denied. (Tr. 1-4). As a result of the denial, ALJ Miller's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). Plaintiff has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION

Facts

Forrester was born on June 22, 1965, and was 39 years old at the date of the alleged disability onset, and 43 at the time of the ALJ's decision. (Tr. 16, 23). Forrester has a high school equivalency diploma (GED). (Tr. 26). His past relevant work includes work as a finisher, groover, line leader, metal stamper, oven operator, and slitter operator. (Tr. 122). Forrester's last job required him to handle large, cumbersome, heavy rolls of paper,

weighing 300 to 400 pounds, and he was required to crawl on the floor for a significant portion of the day.  (Tr. 27).

The medical evidence can be summarized as follows:

Forrester began experiencing lower back pain around May 2004, and was prescribed pain medication as treatment.  (Tr. 169-70).  In December 2004 Forrester was instructed by Dr. Nianjung Tang to limit his work to include only occasional bending or stretching, and to not lift greater than 10 pounds.  (Tr. 268).

Forrester treated with numerous physicians over the course of his alleged disability, and received instructions on multiple occasions to limit his bending, twisting, and stretching, and to also limit his lifting to less than 25 pounds.  (Tr. 253, 258, 261, 263).  In January of 2005, Forrester's lifting was limited to not more than 15 pounds.  (Tr. 265).  On October 13, 2005, Forrester had an anterior lumbar fusion and discectomy at the L4-5 level. (Tr. 28).  Three days after his successful back surgery Forrester was discharged from the hospital.  (Tr. 183).  Thereafter, he was placed on an exercise program by Dr. Michael Arata.  (Tr. 247). Dr. Arata then released Forrester from his care and cleared him to work without restrictions, after noting that Forrester's spine looked "very good." (Tr. 245-46).  Since July 2007, Forrester has sought medical care from a low cost / free clinic, and the treatment notes do not provide many detailed objective findings. (Tr 14).

Dr. Brian Allen Adams performed a consultive examination on August 28, 2006. (Tr. 349-54). Dr. Adams observed that Forrester had difficulty getting on and off the exam table and up and out of a chair. (Tr. 350). Dr. Adams reports the following as well:

> Gait is slow but steady. He does require the assistance of assistive device that being a cane, use of stability that he uses in short and long distances. He also uses it to help get in and out of a chair. It is medically required. It is use [sic] at all times.

(Tr. 351). Dr. Adams noted that his exam revealed that "gait and station are slightly unsteady with the assistance of a cane [and] [t]he patient is only able to walk on his heels and toes with a cane and squat with a cane at 100%." (Tr. 351). He also noted that Forrester could walk heel-to-toe with a cane. (Tr. 351). Furthermore, the report notes decreased range of motion in Forrester's lower back and hips. (Tr. 351). Dr. Adams further noted that Forrester had limitations in his ability to sit, walk, stand, bend, and crouch and that his lifting was limited to 25 to 30 pounds. (Tr. 352).

Dr. Montoya reviewed the medical records in this case and completed a physical residual functional capacity assessment finding that the record supported the following limitations: Occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk 6 hours in an 8 hour workday, sit 6 hours in an 8 hour workday, and unlimited pushing and/or pulling. (Tr. 355-362). Dr. Montoya also noted that the record

4

supported the following postural limitations: only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling, and never climbing ladders ropes and scaffolds. (Tr. 357). Dr. Montoya recommended Forrester avoid concentrated exposure to hazards such as machinery and heights. (Tr. 359). He found no manipulative or communicative limitations. (Tr. 359).

Forrester also complains of depression. Forrester treats his symptoms of depression with an antidepressant medication. (Tr. 153-155). He received a psychiatric evaluation from Dr. William A. Shipley in July 2006 and was deemed to have no severe mental impairment. (Tr. 235-48).

Forrester described his typical day to the ALJ as very sedentary, noting that he lies down about three times a day, for three to four hours per time. (Tr. 30). Forrester reports being able to walk 200 to 300 feet at a time, before requiring a brief break. (Tr. 33). Forrester testified that he always walks with a cane, and that at times the pain in his lower back and legs requires him to use a walker. (Tr. 34). Forrester also testified that he uses the cane to pull himself "out of bed and off the chairs and things like that." (Tr. 35). Forrester alleges that his activities of daily living are limited as a result of his impairments, and that he relies extensively on his girlfriend, with whom he lives, to perform routine tasks around the home. (Tr. 40).

5

After hearing Forrester's testimony at the hearing on
September 19, 2008, ALJ Miller posed a number of hypothetical
questions to VE Barkhaus.   (Tr. 47- 49).   For the first
hypothetical, the ALJ asked the VE to assume an individual with the
same age, educational background and work experience as Forrester,
as well as these additional limitations:

> sit, stand, walk six out of eight hours each
> [workday]. Lift, carry, push, pull 20 pounds
> occasionally, 10 pounds frequently. Usual
> definition of light work. With the additional
> limitations as follows, occasional climbing
> ramps and stairs, balancing, stooping,
> kneeling, crouching. Never climbing ladders,
> ropes or scaffolds. Avoid concentrated
> exposure to hazards, and what I mean by that,
> work at unprotected heights and around
> dangerous, moving machinery. Let's give
> simple, routine, repetitive task limitations
> also. Also lastly, sit/stand at will option.

(Tr. 47). In response to this hypothetical, the VE testified that
this individual could not perform the work that Forrester has
performed in the past, but could perform a number of jobs including
electrical accessories assembler, small product assembler, and
laundry folder. (Tr. 47).

For his second hypothetical question, the ALJ asked the VE to
include the same limitations that were included in the first
hypothetical, but also the use of a cane for steadiness and
balancing when standing or walking. With this additional
limitation, the VE testified that no light jobs could be performed.
(Tr. 48).

6

The following exchange then occurred:

> Q: So we're down to sedentary work?
> A: Yeah, un-huh, sedentary work.
> Q: Any sedentary work which would accommodate that additional limitation?
> A: Yes. Jobs in the sedentary category could include that of an addresser which there are approximately 75 in the region. That of an order clerk which there would be 150. Or that of a telephone clerk which there would be 100.

(Tr. 48).

The record was closed (Tr. 49) and on November 13, 2008, ALJ Miller issued his decision finding that Forrester had not been under a disability within the meaning of the Social Security Act from December 6, 2004, through the date of his decision.


Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might find adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exits, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in

7

mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for disability insurance benefits under the Social Security Act, the claimant must establish that he is disabled. To qualify as such, the claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1:    Is the claimant performing substantial gainful activity? If yes, the claim is disallowed, if no, the inquiry proceeds to step 2.

Step 2:    Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to step 3.

Step 3:    Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then the claimant is automatically disabled; if not, then the inquiry proceeds to step 4.

Step 4:    Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to step 5, where the burden of proof shifts to the Commissioner.

Step 5:     Is the claimant able to perform any other work within his residual functional capacity in the national economy? If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

The ALJ found that Forrester had not engaged in any substantial gainful work from the onset date of his alleged disability through the date of the decision. (Tr. 11-13). Additionally, the ALJ noted that while Forrester had severe impairments, he had no impairment or combination of impairments that met or medically equaled any of the impairments included in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1 (Id.). The ALJ found that while Forrester could not perform any of his past relevant work given his disability, he could perform a significant number of other jobs in the national economy, and therefore, was not disabled. (Tr. 16-17).

More specifically, the ALJ found that Forrester has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) requiring a sit/stand option at will; use of cane for steadiness in balance when standing or walking; only occasional climbing of ramps/stairs, balancing, stooping, crouching, and kneeling; no climbing of ropes, ladders, and scaffolds; avoid concentrated exposure to hazards such as work at unprotected heights or around dangerous moving machinery; and involving only simple, repetitive, routine tasks. (Tr. 13).

9

Relying on the testimony of the VE, the ALJ further found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 16). In reaching this decision, the ALJ noted the following:

> [T]he Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as addresser (75 jobs in the relevant economic region in which the claimant resides); order clerk (150 jobs in the region); and telephone clerk (100 jobs in the region). The vocational expert stated that the relevant region is the northeastern region of Indiana. The vocational expert testified that, in the State of Indiana, the number of jobs would be 5 or 6 times these numbers.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, with the exception of the sit/stand option, which is not recognized by this publication. However, the undersigned finds the vocational expert's testimony to be reasonable, including the testimony regarding the sit/stand option, based on the vocational expert's experience in the vocational field.

(Tr. 17). Thus, Forrester's claim failed at step five of the sequential analysis, and the ALJ found that the claimant had not been under a disability, as defined in the Social Security Act, from December 6, 2004, through the date of his decision.

Forrester believes that the ALJ committed an error by relying on the VE's testimony to support his conclusion that Forrester is able to perform other work within his residual functional capacity in the national economy. He also asserts that the jobs cited by the ALJ in his decision are not a "significant number." Lastly, Forrester argues that the ALJ improperly minimized the Consultive Examiner's observations regarding Forrester's use of a cane.

ALJ's Use of VE Testimony

Forrester argues that the ALJ erred at step 5 of the sequential analysis because he failed to include all limitations he ultimately included in Forrester's residual functional capacity in a third hypothetical question directed to the VE and then erroneously relied on that testimony to support his finding at step five of the sequential analysis. The ALJ's hypotheticals and the VE's responses to those hypotheticals have been set forth in detail above.

Forrester contends that the "inherent reason" that the VE answered that there were no jobs that the hypothetical individual could perform in response to the second hypothetical (the one that added the use of a cane for steadiness and balancing when standing or walking) is "because the work identified required bilateral manual dexterity. When the worker was 'standing' in the 'standing phase' of the sit-stand at will option, he could not perform the

work if one hand was occupied with a cane." (DE 15 at 11).

Forrester criticizes the ALJ for stating his last hypothetical to the VE in a curt form: "So we're down to sedentary work?" (DE 15 at 11). Forrester then argues that "[s]ince the specifics of the third hypothetical were not set forth, the only reasonable interpretation was that the ALJ was referring to sedentary work as defined in SSR 83-12, without the sit-stand at will option." (DE 15 at 11). According to Forrester:

> [t]he stated residual functional capacity in the decision was never asked to the Vocational Expert. If the ALJ had asked a hypothetical that included sedentary with a sit-stand at will option and use of a cane for steadiness and balancing when standing or walking, logic would have forced the Vocational Expert to answer the "other work" question "No" for the very same reason that governed his response in the second hypothetical, i.e. the jobs required bilateral manual dexterity.

(DE 15 at 11).

This Court agrees with Forrester that the ALJ stated his third hypothetical rather curtly.[1] This Court also agrees with Forrester that it would be improper to apply the VE's testimony regarding available positions under one residual functional capacity to a different residual functional capacity. This Court is not,

---

[1]The Commissioner suggests that this question was not a "hypothetical" at all, but a clarification of the ramifications of the limitation added to the second hypothetical question. Whether it is characterized as a third hypothetical or a clarification of the second hypothetical is irrelevant, as it has no impact on the meaning of the dialogue between the ALJ and the VE.

however, persuaded that this occurred in this case.

The ALJ's first hypothetical included a sit/stand at will option.  The ALJ's second hypothetical was identical but added the use of a cane for steadiness and balancing when standing or walking.  Accordingly, when the ALJ asked the VE, "[s]o we're down to sedentary work?", that question can be inferred to include a sit/stand at will option.  The ALJ's follow-up question made it clear that the ALJ wanted to be certain the VE had included the further limitations regarding the use of the cane included in the second hypothetical, the limitation that caused the VE to testify that the hypothetical individual would not be able perform any light jobs.

If, as Forrester contends, it is the combination of the use of the cane and the sit/stand at will option that prevented the VE from concluding that the individual described in the ALJ's second hypothetical could perform a significant number of jobs, then the VE was clearly aware that the ALJ had included the sit/stand at will option in his first and second hypotheticals.  The ALJ never asks the VE to consider any hypothetical without a sit/stand at will option.  Forrester's suggestion that the VE could not have inferred that the ALJ's question regarding sedentary work was to include a sit/stand at will option is not persuasive.  A reasonable reading of the transcript suggests that the VE was aware that the ALJ's hypothetical individual needed a sit/stand at will option,

13

and with this knowledge, opined that the jobs of addresser, order clerk and telephone clerk were available to such an individual. Accordingly, Forrester's argument fails.


Number of Jobs

Forrester argues that the ALJ also erred at step five of the sequential analysis because the number of jobs identified as jobs Forrester could perform is not significant.   Forrester relies on *Lee v. Sullivan*, 988 F.2d 789 (7th Cir. 1993).   The Court of Appeals for the Seventh Circuit, in *Lee*, found that 1,400 positions was a significant number.   In support of its finding, the Court cited to a number of cases finding that even fewer positions would support a finding that a significant number of positions existed.   The Court noted that:

> In *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), the Sixth Circuit found 1,350 positions were a significant number of jobs.   In *Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1479 (9th Cir. 1989), the Ninth Circuit found 1,266 positions were within the parameters of a significant number of jobs. The Tenth Circuit, while refusing to draw any bright line, found 850-1,000 potential jobs were a significant number of jobs in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330-32 (10th Cir. 1992).   *See also Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs are significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 positions are significant number); *Nix v. Sullivan*, 744 F.Supp. 855, 863 (N.D. Ill. 1990) (675 jobs are significant number), *aff'd*, 936 F.2d 575 (7th Cir. 1991).

*Lee*, 988 F.2d 789 (7th Cir. 1993). *Lee*, which Forrester relies on, cites approvingly to a case which finds that even as few as 174 positions is a significant number. In *Liskowitz v. Astrue*, the Seventh Circuit likewise noted that "[a]s few as 174 jobs has been held to be significant . . . and it appears to be well-established that 1,000 jobs is a significant number." 449 F.3d 736, 743 (7th Cir. 2009). Forrester offers no authority that supports his argument that the number of jobs the VE testified would be available, 325 in the region, and five or six times that many in the state, is not substantial. In fact, Seventh Circuit precedent suggests the opposite.


Minimization of the Consultive Examiner's Observations

The entirety of Forrester's argument with regards to the minimization of the consultive examiner's observations is as follows:

> Finally, the ALJ improperly minimizes without adequate explanation the Consultive Examiner's observations and conclusions about the cane. The Consultative Examiner stated about the cane:

> > Gait is slow but steady. He does require the assistance of assistive device that being a cane, use of stability that he uses in short and long distances. He also uses it to help get in and out of a chair. It is medically required. It is used at all times. ... (R. 351).

> The additional use of a cane to get in and out

15

> of a chair every time there was a change in
> the sitting or standing position would affect
> the pace at which the Plaintiff would be able
> to perform a job and would further erode the
> improperly used and already very thin
> occupational base.

(DE 15 at 12).

The ALJ accepted Forrester's testimony that he needs to use a cane for steadiness in balance when standing or walking, although his opinion expresses some reservation about whether the medical record actually established that Forrester needed to use a cane. (Tr. 13-14). However, as Forrester points out, the ALJ does not specifically address the use of the cane for getting in and out of a chair. Unfortunately, Forrester points to no authority establishing the ALJ's obligation to do so, and Forrester has produced nothing, other than his attorney's argument, to suggest that the use of a cane to assist in getting in and out of a chair would significantly affect the pace at which the sedentary jobs at issue could be performed or that it would significantly erode the occupational base. Although Forrester's development of his argument is less than full, this case was decided at step 5 of the sequential analysis and the burden of establishing that Forrester is able to perform other work within his residual functional capacity rests with the Commissioner.

The Commissioner's brief addresses Forrester's argument in a footnote as follows: "Plaintiff also argues that the ALJ did not adequately accommodate his need to use a cane (Pl.'s Br. at 12),

16

but the ALJ explicitly included such a limitation in the hypothetical question he posed to the vocational expert (Tr. 48)." The Commissioner's response completely misses the point. The Court found neither Forrester's brief nor the Commissioner's response particularly helpful in deciding the issue raised, but the issue was raised and the Court must give it consideration.

It has been noted that "even when medically required, the use of a cane does not rule out the ability to perform sedentary work." *Harris v. Astrue*, No. CV 08-2726 AJW, 2009 WL 2912655 (Sept. 8, 2009 C.D. Cal.); *see also* SSR 96-9p. However, SSR-96-9p directs that, where a hand-held assistive device is medically necessary, "it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." That is precisely what the ALJ did, and the vocational expert testified that a significant number of positions remained that the hypothetical individual with Forrester's residual functional capacity could perform even with the use of the cane for steadiness in balance when standing or walking. However, a VE is only required to answer the hypothetical questions posed to him, and here, the ALJ did not include a limitation with regards to using a cane to get in and out of a chair. SSR 96-9p makes it clear that the reason the testimony of a VE is needed is because whether or not the occupational base is significantly eroded will depend on the precise nature of the need

17

to use a cane.  SSR 96-9p provides in part as follows:

> For example, if a medically required hand-held
> assistive device is needed only for prolonged
> ambulation, walking on uneven terrain, or
> ascending or descending slopes, the unskilled
> sedentary occupational base will not
> ordinarily be significantly eroded. . . . On
> the other hand, the occupational base for an
> individual who must use such a device for
> balance because of significant involvement of
> both lower extremities (e.g., because of a
> neurological impairment) may be significantly
> eroded.

SSR 96-9p at 6.

20 C.F.R. section 404.1527 provides that, "[r]egardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."  The regulations then list seven factors to be considered, including the examining relationship, treatment relationship, supportability of the opinion, consistency with other evidence, specialization of the physician, and other factors.  It is well-established that an ALJ's decision must always give good reasons for the weight given to the opinions of treating physician's.  SSR 96-2p; *see also* 20 C.F.R. 404.1527(d)(2).  The regulations also make it clear that, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist,

18

or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(f)(2)(ii).

In the ALJ's decision, he does not discredit the opinions of any of Forrester's treating physicians, but he also does not explicitly state that he is giving controlling weight to them. The ALJ noted that at the time Forrester was dismissed from Dr. Arata's care, "there [was] no indication in the record that the claimant was still using a cane or walker or that he needed one" and that "[t]here are not many records since that time." (Tr. 14). He further notes that Forrester receives care through a local low cost/free clinic, and their treatment records "do not give much in the way of detailed objective findings." (Tr. 14). In this case, because the ALJ's residual functional capacity included the use of a cane for steadiness in balance when standing or walking, it appears that the ALJ gave more weight to the opinion of Dr. Adams, a consultative examiner, than to Forrester's treating physicians. Yet, the ALJ also appears to not fully credit Dr. Adams' opinion regarding the use of the cane because the ALJ does not include the need to use a cane to get in and out of a chair in Forrester's residual functional capacity. In fact, a reading of the opinion suggests that the ALJ might have been mistaken regarding what exactly Adams' opinion said. The ALJ writes that "[t]he

19

consultative examination of Dr. Adams appears to show that the claimant is not as limited as alleged at the hearing.  The consulting physician did not see the medical reason for the cane, other than to ensure steadiness in standing and walking, which findings [sic] is adopted and set forth in the residual functional capacity." (Tr. 15).  It is possible that the ALJ just overlooked this one short sentence in the record.[2]  It is also possible that the ALJ could have rejected (or did reject) Adams' opinion regarding the need to use a cane to get in and out of the chair as too brief, conclusory, and inadequately supported by clinical findings.  It is likewise possible that the VE's testimony regarding available positions would not have been altered by the inclusion of the need for the cane to get in and out of a chair in the residual functional capacity, but this Court does not have the benefit of expert testimony on this subject.

Although this Court "may not re-weigh the evidence or substitute [its] judgment for that of the ALJ, the ALJ must at least minimally articulate his analysis with enough detail and clarity to permit meaningful appellate review." *Bradley v. Barnhart*, 175 Fed. Appx. 87 (7th Cir. 2006) (citing *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).  The ALJ's decision need not address every piece of evidence, but must "build an

---

[2]It is noted that Forrester's counsel did nothing to bring this evidence to the ALJ's attention at the hearing.

accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000).   The ALJ's decision offers little explanation of the weight given to Dr. Adams' opinions.   The ALJ's decision does state that "[t]he undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-6p and 06-3p."  Although the ALJ's decision offers assurance that he followed the relevant regulations and social security rulings, the decision itself does not demonstrate his adherence.   Unfortunately, this Court can not read ALJ Miller's mind, and neither can this Court speculate as to whether the inclusion of the use of the cane to get in and out of the chair would have altered the VE's testimony.  ALJ Miller's decision does not provide this Court with sufficient detail for this Court to find that he has built an accurate and logical bridge from the evidence to his conclusion.  Accordingly, remand to the Social Security Administration is required.


Remand

Forrester requests that this Court reverse the Commissioner's decision denying him benefits and award past-due and future Social Security Disability benefits.   In the alterative, Plaintiff requests that this cause be remanded and that a new hearing be held before a new ALJ.  Because of the nature of the error, remand is more appropriate than an award of benefits.  Furthermore, there is

nothing in ALJ Miller's opinion which suggests any bias that would prevent him from continuing to preside over this matter. Accordingly, this Court declines to order that further proceedings take place before a new ALJ.  That is a decision best left to the Social Security Administration.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

**DATED: September 30, 2011**              **/s/Rudy Lozano, Judge**
                                           **United States District Court**